UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number:  11-61684-CIV-MORENO

TWINSTAR PARTNERS, LLC,,

      Plaintiff,

vs.

DIAMOND AIRCRAFT INDUSTRIES, INC., *et al.*

      Defendants.

_____/

## ORDER GRANTING DEFENDANT DIAMOND AIRCRAFT INDUSTRIES, GMBH'S MOTION TO DISMISS

Plaintiff, Twinstar Partners, LLC, purchased two aircraft and the engine manufacturer is not honoring its warranty.  To recover from the loss of the warranty, Plaintiff is suing for fraud three related entities, Diamond Aircraft Industries, Inc. ("Diamond Canada"), the manufacturer of the aircraft Plaintiff purchased, Diamond Aircraft Sales U.S.A. ("Diamond U.S.A"), a wholly-owned subsidiary of Diamond Canada used to market products in the United States, and finally Diamond Aircraft Industries, GmbH ("Diamond Austria"), a related manufacturing company based in Austria. Diamond Austria filed a Federal Rule of Civil Procedure 12(b)(2) motion arguing the Court lacks personal jurisdiction.  The Court agrees the record is insufficient to establish general jurisdiction under the recent standard enunciated by the Supreme Court in  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

THIS CAUSE came before the Court upon the Defendant Diamond Aircraft Industries, GmbH's Motion to Dismiss **(D.E. No. 94)**, filed on **June 9, 2014**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.

## I. BACKGROUND

Plaintiff, Twinstar Partners, LLC is an Arizona corporation that purchased two Diamond DA42 Twin Star aircraft. Defendant, Diamond Austria manufactures aircraft. The aircraft at issue in this case were delivered by Defendant Diamond Canada in Ontario, Canada. The third Defendant is Diamond U.S.A., a wholly-owned subsidiary of Diamond Canada that is tasked with developing a U.S. market for the aircraft. In its Third Amended Complaint, Plaintiff alleges the Diamond entities all operated under the same ownership and formal executive authority, with Christian Dries serving simultaneously as the Chief Executive Officer for Diamond Austria, Diamond U.S.A., and Diamond Canada. Plaintiff states in the amended complaint that Diamond U.S.A. has little or no assets and operates as an agent or alter-ego of Diamond Canada and Diamond Austria.

In December 2006, Plaintiff entered a contract with USAERO, LLC, a non-party distributor in Arizona, to purchase its first DA42 aircraft. Plaintiff purchased the second DA42 aircraft in May 2007 from Galvin Flying Service, Inc., a non-party distributor in Seattle, Washington. The aircraft at issue in this case were equipped with twin turbo diesel engines that were manufactured by the German company Thielert Aircraft Engines GmbH ("TAE"). TAE and the Diamond entities are separate, unrelated entities. Diamond installed TAE engines in some of its aircraft. The engines were warranted only by TAE. Diamond specifically excluded the TAE engines from its warranty. On or about April 24, 2008 – more than a year after Twinstar Partners, LLC contracted to purchase the aircrafts – TAE entered into a proceeding in Germany that is akin to a bankruptcy in the United States, and its warranties were voided. Plaintiff seeks to recover from Defendants the damages Plaintiff suffered due

to the loss of the engine warranty.

Plaintiff's Third Amended Complaint is based on its reliance on representations by Diamond's employees or agents regarding the TAE warranty. Plaintiff's two counts are for fraudulent misrepresentation and fraudulent concealment. In ruling on Diamond Canada and Diamond U.S.A.'s motion to dismiss, the Court found Rule 15(b)'s relation back doctrine applies to allow Plaintiff to amend the complaint. The Court also found the complaint meets Rule 9(b)'s particularity requirements. The remaining issue in Diamond Austria's motion to dismiss is whether the Court may exercise personal jurisdiction over Diamond Austria.

### *Background Relevant to Personal Jurisdiction*

In support of the motion to dismiss, Diamond Austria filed the declaration of its Chief Executive Officer Christian Dries, where he provides the following information. His declaration establishes that Diamond Austria is not incorporated in Florida and is not registered to do business in Florida. He adds that Diamond Austria has no offices in Florida, and therefore, has no mailing address or telephone number in Florida. Nor does Diamond Austria have assets, bank accounts, or investments here. His testimony is that Diamond Austria does not employ anyone in Florida and has never filed taxes or administrative reports in Florida. The declaration also states that Diamond Austria has never engaged in advertising in Florida and it does not directly sell aircraft to any person or business in Florida. Rather, any sales in Florida would have happened through Diamond Canada, Diamond U.S.A., or an independent dealer. The only independent dealer in Florida, with which Diamond Austria had a relationship, is Premier Aircraft Sales, which did not sell either aircraft to Plaintiff. According to Christian Dries, Diamond Austria does not have an ownership interest in Diamond U.S.A., which is a wholly-owned subsidiary of Diamond Canada.

In responding to the motion to dismiss and Christian Dries's declaration, Plaintiff lists thirteen

-3-

points to establish personal jurisdiction over Diamond Austria in Florida.  Below is a summary of that list:

(1)     Diamond Austria manufactured the DA42 in Austria, and then distributed directly to Diamond U.S.A. and a third-party distributor Premier Aircraft Sales.

(2)     Christian Dries, CEO of Diamond Austria,  established a place of business in Florida for Diamond U.S.A. to facilitate a market for Diamond Austria's products.

(3)     Christian Dries and Peter Maurer, President of Diamond Canada and Diamond U.S.A., came to Florida for trade shows throughout the last decade.  While at the trade shows, Diamond Austria took orders for new products.

(4)     From 2002-2014, Diamond Austria's products have been annually displayed in Lakeland, Florida to build a market here.

(5)     In 2001, Christian Dries attended the Sun 'n Fun trade show, accepting a type certificate from the Federal Aviation Administration for Diamond Austria's DA40 aircraft.

(6)     Diamond Austria owns a type certificate from the FAA for the manufacture of the DA42 in the United States.

(7)     There are two Distributor Agreements between Diamond Austria and Diamond U.S.A. and Premier.  One agreement states that Diamond U.S.A. is the exclusive distributor in the United States of Diamond Austria's products. The contract with Premier mandates that it must provide office space to Diamond Austria personnel, when they are in Florida.

(8)     To expand its presence in Florida, Diamond Austria established the Diamond Brilliance Flight Center in Naples, Florida in 2006.

(9)     Christian Dries signed an agreement with Embry-Riddle Aeronautical University, where Diamond Austria plans to expand its physical presence in Daytona Beach.  Diamond will expand its current international research and development program working with Embry-Riddle students and faculty in Daytona Beach.

(10)   Diamond Austria and Diamond Canada designated several service centers in four locations in Florida.

(11)   Diamond Austria sells aircraft to Florida consumers through Diamond U.S.A., which is simply a conduit for Diamond

-4-

Austria.

(12)   Diamond Austria entered into a Non-Disclosure Agreement dated May 29, 2013 with Embry-Riddle whereby the parties agreed to exchange information in support of a joint contract with a third-party to develop a DA42 flight simulator.  That agreement is governed by Florida law.

(13)   On June 18, 2013, Diamond Austria entered into a Memorandum of Understanding with Embry-Riddle to focus on the development of competitive technologies, the implementation of cooperative marketing programs, and to create another subsidiary Diamond Airborne Sensing U.S.A. to market Diamond's DA42 multi-purpose platform aircraft from Daytona Beach.

## II. LEGAL STANDARD AND ANALYSIS

### A.  Personal Jurisdiction

Federal courts ordinarily follow state law in determining their jurisdictions over persons, so long as the exercise of jurisdiction is consistent with federal due process requirements. *See* Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  The Court therefore, looks to the Florida long-arm statute to determine whether there is jurisdiction over Diamond Austria in this case. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996).  Plaintiff argues its case against Defendant Diamond Austria falls under the rubric of general jurisdiction under Florida Statute § 48.193(2), which permits general jurisdiction over a foreign defendant that "is engaged in substantial and not isolated activity within the state. . . whether or not the claim arises from that activity." "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). With respect to general jurisdiction under Florida's long-arm statute, therefore, the Court must determine whether the exercise of personal jurisdiction over Diamond Austria exceeds constitutional bounds.  In so doing, the Court notes that it is Plaintiff's burden to establish personal jurisdiction.

*Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

General jurisdiction allows federal courts to hear cases against foreign corporations when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011)); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). *Goodyear* clarified that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. *Goodyear*, however, does allow for an exercise of personal jurisdiction in cases where a corporation is neither incorporated in the forum state nor holds a principle place of business there. *Id.* In this case, it is undisputed that Defendant Diamond Austria is not incorporated in Florida, nor does it have its principal place of business here. This begs the question of whether Plaintiff can establish general jurisdiction within that outer-boundary set forth in *Goodyear*.

Put another way, this plaintiff, like the *Daimler* plaintiff, is requesting the Court look beyond those exemplars, the place of incorporation and the principal place of business, and approve the exercise of general jurisdiction based on the determination that Diamond Austria's contacts in Florida are so "continuous and systematic" as to render it essentially at home here. *Id.* (quoting *Goodyear*, 131 S. Ct. at 2857). The *Daimler* Court added that in a transnational context, as is the case here, federal courts must also heed principles of international comity and should not employ an expansive view of general jurisdiction. *Id.* at 763 (holding there was no general jurisdiction in California over claims arising in Argentina against a German corporation).

Mindful of this guidance, the Court looks to the contacts Diamond Austria has with Florida to determine whether its contacts with Florida are so "continuous and systematic" as to render it at home here. Plaintiff has provided the Court with a thirteen-point list. *See infra.* at 3-4. These points, in

Plaintiff's view, establish the type of continuous contact that make Florida home to Diamond Austria.

First, Plaintiff raises various points concerning the relationship of Diamond Austria with Diamond U.S.A., which is based in Florida. A foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (2002). "Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the subsidiary's local activities." *Id.* (quoting *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000)). In this case, there is no evidence to persuade the Court that Diamond Austria has an ownership interest in Diamond U.S.A., making it a subsidiary. Rather, the evidence is that Diamond U.S.A. is a wholly-owned subsidiary of Diamond Canada. Accordingly, the Court does not find that *Meier*'s standard is met, let alone the more stringent standard set forth in *Goodyear* and *Daimler*. *See Aronson v. Celebrity Cruises, Inc.*, No. 12-CV-20129, 2014 WL 3408582, *7 (S.D. Fla. May 9, 2014) (expressing concern over the continued viability of *Meier*'s standard for establishing general jurisdiction over a parent company in light of *Goodyear* and *Daimler*).

The Court, nevertheless, will analyze the relationship between Diamond Austria and Diamond U.S.A. to determine if there is sufficient contact to make Florida "home" for Diamond Austria. Plaintiff alleges that Diamond Austria's CEO Christian Dries established Diamond U.S.A. as a sales conduit for Diamond Austria to sell aircraft in the United States. In this case, the aircraft was manufactured by Diamond Canada and sold by another vendor, USAERO, in Arizona. In spite of these factual circumstances, the Plaintiff is alleging that general jurisdiction is proper based on the relationship between Diamond U.S.A. and Diamond Austria. Due to the presence of Diamond U.S.A.

in Florida, Christian Dries visited trade shows in Florida.  Mr. Dries admits to attending two trade shows and Plaintiff has vaguely asserted he has attended trade shows in Florida over the past decade.

These contacts between Diamond Austria and Diamond U.S.A. do not seem sufficient in light of *Daimler* and *Goodyear* to establish general jurisdiction on an agency theory.   In *Daimler*, the Supreme Court rejected the Ninth Circuit's agency theory, finding that it subjected "foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' . . .rejected in *Goodyear*." *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2856).  Without more evidence, this Court declines to find general jurisdiction over Diamond Austria is proper based on Diamond U.S.A.'s actions here.  *See also Aronson*, 2014 WL 3408582 at *7 (declining to exercise general jurisdiction over a tour operator); *Air Tropiques, Sprl v. N. & W. Ins. Co. Ltd.*, No. H-13-1438, 2014 WL 1323046, at *8-11 (S.D. Tex.  March 31, 2014) (declining to extend jurisdiction over a foreign defendant with an office in the forum state, and noting that, before *Daimler*, the defendant might have been subject to general jurisdiction under *Meier*).

This holding is especially appropriate, because Plaintiff's main allegation to tie Diamond Austria to Diamond U.S.A. is that Diamond U.S.A. served as a conduit for Diamond Austria to sell its products here.  The record evidence establishes that Diamond Austria sold two aircraft through Diamond U.S.A. as a conduit in Florida.  Even if Diamond U.S.A. served as a conduit for more than two sales, the Court could not find that sufficient to establish general jurisdiction.  As the Supreme Court, in *Daimler*, explained, the placement of a product into the stream of commerce "may bolster an affiliation germane to *specific* jurisdiction," but do <u>not</u> "warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Daimler*, 134 S. Ct. at 757.  Again, the

Court declines to find that the actions of Diamond Austria through Diamond U.S.A. confer general jurisdiction on this Court.

Finally, the last question is whether the contacts and agreements with Embry Riddle University are sufficient to establish general jurisdiction. The evidence supports Mr. Dries's assertion that the Memorandum of Understanding was signed in Paris, France. Plaintiff has provided the Court with a series of internet articles promoting the relationship with Embry-Riddle and establishing a new Diamond Brilliance Fit Center in Naples, Florida. Even accepting that the internet articles paint reality and inferring the evidence in the light most favorable to the Plaintiff, the Court does not find the test for general jurisdiction met. Simply, these facts are insufficient to find that Diamond Austria is at "home" in Florida. Accordingly, the Court grants Diamond Austria's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of August, 2014.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record